Argument now in Frederick Livingston v. Allegheny County. Mr. Grimm? Yes. May it please the Court, good morning. My name is Robert Grimm and I represent the appellant, Frederick Livingston, who is the plaintiff in the underlying case. I reserve three minutes for rebuttal. Great. On behalf of Mr. Livingston, we filed a complaint in the United States District Court here against Allegheny County, several of the child and youth service workers, and three of their detectives of the Allegheny County Police Department, as well as Superintendent Moffitt, alleging civil rights violations pertaining to an arrest and a prosecution of Mr. Livingston for false criminal charges. Mr. Livingston, we have filed an appeal before this Court following a summary judgment that was entered in favor of the defendants. It's our contention that there are certain and several issues, genuine issues, and material fact that should allow this case to go back to the trial court for further proceedings and primarily for a jury trial. Unfortunately, I have to go through some of the facts of this matter to get where I want to, but it's our contention that there were violations of Mr. Livingston's 14th and his Fourth Amendment rights, and I believe that the evidence that we produced before the trial court should shock the conscience of this court and certainly should have shocked the conscience of the trial court sufficiently enough to allow the case to go to a jury. Mr. Livingston is and was a police officer for the Borough of Edgewood. He has two daughters to a woman named Carmen Williams. From 1995 to 2000, Mr. Livingston lived with Ms. Williams and her two daughters as well as with his mother. Beginning in 2000, he moved in with Ms. Williams and the two daughters. I believe he lived in the Penn Hill section of Pittsburgh. But one of the reasons he moved in was because the youngest daughter, who was becoming a concern, she was having problems at school, being disrespectful, and generally was becoming a problem for her mother, Mr. Livingston being more of a disciplinarian. In 2002, Mr. Livingston was the subject of a CYS investigation when the youngest daughter had made an allegation to a school nurse that her father had abused her. CYS conducted that investigations. In May of 2002, Mr. Livingston filed a dependency petition in Allegheny County seeking help from CYS because of the problems that he and the mother were experiencing with the youngest daughter. Problems persisted where she would run away from home, truant from school, and on one occasion she actually used a razor blade and tore up his police uniform. CYS again invested that dependency petition. And one of the things they found that there was no evidence of abuse because the youngest daughter had again made allegations that her father had abused her. But rather CYS told Mr. Livingston that it's very common for children who are not happy with their parents to make up such allegations. The dependency petitions, and there were actually a total of three, the first two filed by Mr. Livingston. He withdrew when the youngest daughter agreed that she would behave and obviously become a better child. But in any event, a third dependency petition was filed. And as a result of that one, in July of 2004, Judge Christine Ward of Allegheny County determined that the youngest daughter was dependent. The same time, the oldest daughter was also becoming a problem. She was spending more time with her boyfriend who I believe was about five years older than she was. She was a minor. He was in his early 20s. She also attempted a suicide. She was put in Western Psychiatric Institute for about a week. This is obviously a parent's worst nightmare how things are developing. But in any event, now the youngest daughter has again run away from home. She was eventually picked up and she is placed in a shelter. While this was going on, Mr. Livingston had expressed numerous complaints to CYS that they were not being responsive to the issues and not helping him or his family. At one point, CYS then decided to have a meeting with all involved and to develop a plan. The plan was eventually accepted. What was proposed was that the youngest daughter would then move in with the father. When the youngest daughter heard this, she immediately wanted to be interviewed by a child psychologist, which she was. At this point, she now makes an allegation that her father had sexually abused her older sister many years before. Counsel, we've got these. We're all good on these facts. Go ahead. Here's the point I want to get to. I believe that there were sufficient facts to support a 14th Amendment substantive due process right because the fact that CYS and the Allegheny County Detectives did not follow their own If we disagree with you on the requirement of following protocol, do you lose? I'm sorry? I said, if we disagree with you on the notion that they failed to follow protocol, do you lose? No. Well, then, if you put aside protocol, then your point is that the failure to investigate to the extent that you believe it should have occurred in and of itself amounts to a constitutional violation. That's correct. Right? Right. Okay. If you look at the cases cited, some other cases, does it shock the conscience when the key players in a situation like this are interviewed? Maybe they're not interviewed as frequently as you'd like. Maybe they're not interviewed to the extent that you'd like. But when the basic players in any situation like this are interviewed, what is it that they didn't do? Putting aside protocol, because you said that's not the all and end all, what is it that they didn't do that amounts to something that would shock the conscience? Well, let's take it from two sides. The CYS worker clearly did nothing. She knew about the protocol, but didn't follow it. The only thing that she did was she arranged for a forensic interview with Dr. Nathan for the victim to undergo. She testified that she thought the only thing that she had to do was arrange for a forensic interview, interview the perpetrator, and that was it. That's the only thing that she said that she thought she had to do. Common sense would tell us that there's a lot more here based upon the facts that I described earlier. The two detectives only did a little bit further. Well, you glossed over Dr. Nathan, though. I mean, isn't that a problem for you? You have a medical professional making a factual finding that she scored on nine of the ten factors. How do you deal with that? Well, correct. There's no doubt. And that's clearly what the defendants or appellees rely on, is that we had Dr. Nathan and that should be sufficient. But clearly that wasn't. They didn't even follow what Dr. Nathan had suggested. Dr. Nathan had suggested that a forensic interview be conducted of the younger daughter because she was the reporter of the abuse. They didn't do that. Neither CYS or the detectives even did that. The detectives did talk to the younger daughter on one occasion, but they said they didn't think that she was worthy of being a witness that was sufficient for them to talk about. And because of that particular conclusion by them, they should be faulted so that this amounts to a constitutional violation? I think clearly not just that alone, because had they done the work, at least that the protocol suggested they should do, they would have found out a lot more information that may certainly have presented doubts in their minds as to whether or not they should go forward. What's the best case that you have to rely on for the proposition that you propose? Well, the best factual case here, our position is that it clearly shocks the conscious that they didn't follow their own protocol. That clearly is one. The second is in the malicious prosecution claim, the fact that the Lieutenant Korczak and Superintendent Moffitt try to keep a witness, Leslie Lewis, from even appearing at time of trial. In fact, when Ms. Lewis went to apply for her job with the county, according to her, Mr. Moffitt said, well, you've been red flagged because you appeared at Mr. Livingston's preliminary hearing. And then when she is subpoenaed to come and testify as a character witness, Lieutenant Korczak calls her up and leaves a voicemail with her and says, to the extent, don't go down there until you talk to us, until you talk to me or Sergeant. And he even goes on for, don't even think about going down there. Well, why I think that is important is the fact that the county was the prosecuting agent here, the two detectives. This wasn't another police department. I can understand the county having one to know if one of its police officers is going to testify in a criminal case. That's fine. But this was their own prosecuting police officers who filed the affidavit in support of the criminal charges. And nevertheless, they try to keep a witness from testifying. In fact, Lieutenant Korczak told her, get out of it. It's always sick. And eventually she did not testify. But nevertheless, if they had such a case, a strong case, which is what they thought. And incidentally, their case was only based upon the forensic interview and the statements of the victim, who in turn had serious credibility problems. But that's endemic to any he said, she said case. Isn't your argument that what's really shocking the conscience here is that two daughters would falsely accuse their father of the worst thing the father could ever be accused of? Isn't that what shocks the conscience? That and the fact that the defendants did nothing to determine whether or not those allegations were in fact true, other than the forensic interview. That was it. They have the expert. You know, I mean, you're not alleging some sort of conspiracy that Dr. Nathan is particularly quick or susceptible to fine blame. I didn't see that. There was no facts. So when you when the so-called expert, child psychologist with the degrees on the wall does what she does and she comes back with this very damning report, the police aren't entitled to rely on. I don't suggest that they can't rely on it, but there were other things that they should have done in their own protocol dictates what they should have done. But then we're in the category of they could always do more. But that is correct. That's every criminal prosecution. They could always do more. Well, I think at the very least they have to follow their own protocol, which is in fact, they did not. They clearly the only thing they did was a forensic interview. Had they done more than at least they could determine whether or not there was grounds to pursue the case further. And I'm not suggesting that we will win the case if it goes to trial. I think what it what there is, though, there are issues of genuine issues of material fact that go to a jury. What's the best precedent out there that we can refer to to come to the to help us come to the conclusion that you want us to that this activity shocks the country? Well, I think this is just a fact specific case. I cannot tell you the case of Smith versus Jones that is right on point that allows it. But I think that the Merkle case, which was cited even by Judge Lenehan, gives some the facts are somewhat similar. Merkle's out there. Merkle speaks to the probable cause issue, though. That is correct. That's that's one of the issues. Well, on this issue, on the shocks, the conscience issue, I thought the dichotomy was set between Miller and Croft. Is that not the case? Correct. And it goes to the shocking of the conscious, again, for not following. OK. So my point is this isn't isn't Croft much more egregious than this case? So that the analogy that you're attempting to draw is inept? Yes, but I think the facts here are also egregious equally as well for the fact for the reasons that I've stated earlier. Thank you, Mr. Grimm. We'll hear you on Miss Liebenguth. Good morning. I'm Caroline Liebenguth and I represent all of the affilies in this case. Your Honors, in April of 2005, a 17 year old girl confirmed allegations that were initially disclosed by her younger sister during a therapy session. She admitted to two CYF caseworkers that her dad had sexually abused her for many, many years. It's a sad truth that in these types of cases, in sexual abuse cases of children, there almost never are witnesses. This is a crime that's committed in the privacy of their homes, as it was alleged in this case. So there were no witnesses in this case. Is that though not why they have these protocols in effect so that there's a thorough investigation that results in a fair decision on all sides for the potential victim and for the potential perpetrator? Yes, Your Honor. Were these protocols in effect, the Allegheny County protocols, were they binding on the investigators? Your Honor, the protocol that the appellant is relying upon was not a checklist for caseworkers to follow. It was merely, and it was one of 2,000 documents that we submitted. They just picked that one out because it suited their purpose. The purpose of that protocol is stated clearly on page 3 of the protocol, and it's simply to coordinate investigative activities between the law enforcement agencies and the human services agencies when both are involved in the investigation of a caseworker. They observed the forensic interview that was conducted by Dr. Nathan so as not to traumatize the child by subjecting her to multiple interviews. That was the purpose of the protocol. The protocol was not a checklist of what had to be done. My problem with that is that that may be so, but the findings of the magistrate in here indicate some ambivalence as to their effect and what they were and whether they were followed. Importantly, would there have been a different result had they been followed? Stuck as I am with the record here, I'm frustrated that these findings don't address your argument that you're giving me this morning. Let me address what would have happened if this specific protocol had been followed to the letter. I would note that the protocol states if, whenever possible, this should be done. It doesn't order, it doesn't direct that this must be done because, of course, every situation is different. There can't be a checklist of items that must be checked off in each investigation. This follows the appellant's argument in his brief that if the protocol had been followed, for example, he argues that if it had been followed, the CYF caseworker would have reviewed the entire file and would have been made aware of the fact that the younger sister had made allegations against the father earlier. What would that have proven, first of all, Your Honor? It would have put into question maybe the credibility of the younger sister. And may I note that... At the very least, wouldn't it have shown that these two girls were inherently suspect? And these were very troubled children. One was troubled, Your Honor. If you look at the CYF file, it was the younger sister that was in trouble at school. She was rebellious. She was acting out against her dad. The older sister comments throughout the file by both parents were that she was an A student. She was a good student, that she set a good example for the older student. There were never any allegations of misbehavior on the part of the older daughter until after these allegations of sexual abuse came to light. And when Mr. Graham talks about the previous allegations of abuse that the younger daughter had raised, those were physical abuse. She was alleging that he hit her. It was never a sexual abuse allegation. That was the first time that it was raised. And when she raised, she went to the school nurse, the younger daughter, and she alleged that her dad had struck her. CYF investigated and found that the charges were unfounded. Now technically, that has to be the determination when the physical abuse is not severe enough to meet the requirements of the law. So what happens in most of these cases is if the child says, my father struck me, they investigate and they conclude that the allegations are unfounded, not because the child necessarily lied, but because the physical results are not severe enough to meet the statutory requirements. I have two questions. Following up on Judge Nygaard, I take it it's your point that the protocol is merely advisory and that we shouldn't hold the appellees to be bound by the protocol. It's not dispositive. That's your argument, yes? That's one of my arguments, Your Honor. But even if everything that's stated in the protocol had been done in this case, nothing would have changed. They wanted the caseworker to be aware of the file. Well, she was aware of most of the critical facts because they're stated in Dr. Nathan's report. Dr. Nathan notes that the younger child had problems, that she was aware of. The other allegation that's made is that if the report had been, the protocol had been followed, the caseworker would have interviewed this friend that's mentioned as a witness. There's no evidence that the friend was a witness to any of the abuse. The friend was merely someone to whom she claims she disclosed the abuse at the same time that she disclosed it to her sister and her mother. So that would not have changed anything. If you're correct, let's move back just a little bit on that one. Because even had they been followed or not followed the protocols that were or may not have been followed, if they did not, would you address the shocking of the conscience? Should that shock our consciences if it wasn't followed? Absolutely not. Not under the facts of this case. Because they did the only thing that can be done in a situation where you have he said, she said. They took the child to a specialist. They took her to a specialist that focuses on these specific issues. They submitted her to an interview. They observed the interview. They also had her undertake a specific test to see if she was in fact likely to have been a victim of sexual abuse. She scored within the significant level on nine out of ten factors. They also then interviewed Mr. Livingston who had every opportunity to bring to their attention any potential witnesses, any evidence of any kind that they should have looked at, that they could have looked at. And there's nothing in this record, there's nothing that they will be able to point to today that will show you that had they looked, they would have found this and it would have changed their conclusion. There's absolutely nothing. There's some wild accusations that the girl was pregnant at the time. First of all, what difference would that have made? But secondly, if you look at the record, there is absolutely no evidence of that. None. Mr. Livingston claims he had a bill for $3,000 from Children's Hospital for pregnancy related procedures. This is a very, very meticulous man who kept every scrap of paper CYF sent him. Yet during the course of this litigation, he never produced that bill. Your Honor, even if you find that that was the protocol, that they were somehow required to follow everything that's listed in that protocol, there's not any information that they would have discovered that would have led to a different conclusion in this case. He's also alleged that the charges filed indications were a form of retaliation because he was such a pain in the neck. No evidence of that whatsoever, Your Honor. They asked one of the case workers if he had indicated the every parent that deals with CYF under those stressful situations expresses the satisfaction. There was no evidence of that whatsoever. And, Your Honor, there's no underlying constitutional violation. Thank you, Ms. Leibenguth. Mr. Grimm, rebuttal? Yes, just very quickly. In regards to the retaliation, they went so far as to even get a male as opposed to a female because they were concerned that Mr. Livingston, in their minds, was overbearing towards women. In regards to the protocol, in specific questions in our discovery, we asked them, please provide copies of anal policies, procedures, OCYF policies that employees or the Allegheny County Police refer to or follow or are supposed to refer to or follow when conducting investigations into child abuse allegations, in particular child sexual abuse allegations. They now want to say, well, the policy really doesn't apply. It's just a guideline. Well, why have the policy then? They, in fact, said that's the policy their people are to refer to and clearly, I think, was not referred to. Again, the only thing that was done was the forensic interview. In fact, Ms. Nepic, who was a CYS worker, said, in her mind, that's the only thing she's required to do. The policy or the guideline protocol does not say these are just guidelines, use them as you must. They are, in fact, there for the purpose of preventing what ultimately should not have occurred. There was no physical evidence. This happened a long time ago. So are you saying they have to follow everything in the protocol, even if it's not factually opposite to the particular case? At the very least, one thing, this is going to sound very basic, they didn't even take a photograph of where the allegations of the sexual abuse occurred, a photograph of the bedroom. They didn't make any description of it, nothing. And that is, again, I realize that there isn't any physical evidence because it had occurred many years earlier, which, again, even goes more so that they should have conducted a more thorough investigation to find medical records, talk to friends, family people, et cetera. The friend that we were talking about, both CYS and the detective said, yes, the reason why we want to talk to her is because the victim, the oldest daughter, had told this friend about what had occurred. Ms. Nepic never tried to call her. The two detectives tried to call her once or twice. They did get her to testify at time of trial. At time of trial, she didn't confirm that the oldest daughter had told her. The only thing she said that the oldest daughter told her was that my father came in the room when the door was unlocked. That was it. Again, one of those, certainly a key witness that they should have at least interviewed to determine. And had they interviewed, followed the protocol, one of the things that they may not have done was file these charges. But obviously, we don't know that. That's certainly, again, something I think that would and should go to a jury. Thank you.